NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| LEVI R., | ) | |
| | ) | Supreme Court No. S-18224 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-21-01149 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| MALLORY R., | ) | AND JUDGMENT[*] |
| | ) | |
| Appellee. | ) | No. 1927 – November 2, 2022 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Peter R. Ramgren, Judge.

Appearances: G. R. Eschbacher, Eschbacher & Eschbacher, PC, Anchorage, for Appellant. Notice of nonparticipation filed by Douglas C. Perkins, Hartig Rhodes LLC, Anchorage, for Appellee.

Before: Winfree, Chief Justice, Maassen, Borghesan, and Henderson, Justices. [Carney, Justice, not participating.]

## I.    INTRODUCTION

A woman alleged that her spouse physically and sexually assaulted her during their marriage, and she sought a long-term domestic violence protective order against him. After hearing the parties' conflicting testimony about several alleged incidents of domestic violence, the superior court found that only one alleged incident

---

[*]    Entered under Alaska Appellate Rule 214.

— a sexual assault — had occurred, crediting the woman's detailed testimony about the assault. The court granted the long-term protective order. The man appeals, arguing the court clearly erred by crediting the woman's account of this incident despite crediting his testimony about other incidents. Because the superior court's credibility assessment of the testimony warrants particular deference, we see no clear error and therefore affirm.

## II.     FACTS AND PROCEEDINGS

Levi and Mallory R. married in 2018. Mallory and Levi have no children together, but Mallory has a daughter from a different relationship who lived with them. Mallory and Levi separated on June 4, 2021.

### A.     Mallory's Police Report And Petitions For Protective Order

On June 5, 2021 Mallory reported to a state trooper that she was in a "domestic violence relationship," but she did not report any assault or battery, stating only that she and Levi had gotten into a verbal fight. The trooper told her that none of the conduct she reported was criminal.

On June 7, 2021 Mallory petitioned for an ex parte (20-day) order and long-term (1-year) domestic violence protective order against Levi. Mallory's petitions alleged that Levi had "physically abused and assaulted [her] on multiple occasions" and that he "coerce[d] [her] into doing things [she] [didn't] want," but she did not specifically allege sexual assault. The superior court held an ex parte hearing and granted the 20-day ex parte protective order, finding that "[Mallory was] very afraid of [Levi]."

### B.     Superior Court Hearing and Parties' Testimony

The superior court held a three-day hearing on the petition for a long-term protective order. Both Mallory and Levi testified about domestic violence in their relationship, and their testimony largely conflicted. For example, Mallory alleged that during their honeymoon, Levi was physically violent by "put[ting] hands on [her]" and "not allow[ing] [her] to leave the room." Levi insinuated that Mallory, not he, was

violent that night: Mallory was intoxicated, threw objects at Levi, and "trashed the entire room." Another incident occurred during a vacation to Mexico in 2019. Mallory alleged that Levi threw her out of the hotel room late at night, "scream[ing] in [her] face." Levi denied that he threw her out of the room, asserting that Mallory left on her own after an argument. Mallory also alleged that Levi sexually assaulted her twice. She testified that the two sexual assaults ultimately prompted her to seek the protective order.

The first alleged sexual assault occurred on May 28, 2021. Mallory testified in graphic detail about the incident, stating that Levi physically restrained her and had sex with her while she sobbed and repeatedly told him she did not want to have sex. Mallory stated that she did not suffer any bruises as a result of the assault. Levi denied that the assault happened, and alleged that he did not have intercourse with Mallory at all that day.

The second alleged sexual assault occurred on June 4, 2021. Mallory again testified in detail, stating that she insisted she did not want to have sex and tried to push Levi away, but that he would not let go of her and proceeded to force intercourse. Levi acknowledged that he and Mallory had intercourse that night, but he alleged that it was consensual. He testified in detail about how the atmosphere at home was different that day: Mallory welcomed him home after work "with a kiss and a hug"; they ate dinner together; Mallory initiated intimacy; they had "very consensual" intercourse; and they went to sleep side-by-side afterwards.

D.    **Superior Court's Findings**

The court issued oral findings. Because the evidence presented had largely consisted of testimony from Mallory and Levi, the court acknowledged that "it really comes down to a he said/she said." The court explained that it "lined up all the testimony from both parties . . . [from] the entire record," and it "found [it]self more often than not believing that Levi presented . . . more credible testimony." Crediting much of Levi's

testimony, the court could not find by a preponderance of the evidence that Levi had committed any of the alleged non-sexual acts of domestic violence.

The court then addressed the two sexual assault allegations and explained it had grappled with the evidence: "What has really given me pause in making this decision, why I've taken so much time, is the two allegations of sexual assault and, frankly, Mallory's behaviors after both of the assaults [were] inconsistent with what one would think one would do having been assaulted . . . and that's what I've struggled with." The superior court discussed three instances of Mallory's conduct that it viewed as potentially inconsistent with having been assaulted: (1) that Mallory texted "I love you too" to Levi on the day of the May 28 assault, as well as other affectionate messages a few days later; (2) that Mallory texted Levi's parents shortly after the alleged June 4 assault, encouraging them to attend a planned visit with the couple; and (3) that Mallory did not report Levi to the police or seek medical treatment after either alleged assault. The court stated, however, that these behaviors were subject to multiple interpretations. The court noted that the parties put forward dueling explanations for the texts: Levi argued that the text messages (including the messages exchanged shortly after the alleged sexual assaults) "indicated a loving relationship," but Mallory argued the text messages were just a means of placating Levi "to make sure that the situation didn't get out of hand . . . with her daughter being there . . . with them." Likewise, the court suggested that the lack of reporting was also subject to multiple interpretations, because Mallory and Levi "may not have understood" at the time that rape by a spouse was possible.

The court ultimately concluded that it was more likely than not that the May 28 sexual assault occurred. The court acknowledged that Levi testified sexual intercourse "simply didn't take place" on May 28. However, the court concluded that Mallory was a more credible reporter of this event. When the court "went back and . . . listened to [Mallory's] testimony regarding the May 28th assault," the court could hear

"fear in her voice. It's clearly something that's very difficult for her to testify about and, ultimately, [the court] . . . c[a]me to the conclusion that . . . it's more likely than not that she's telling the truth." The court explained that it had listened to Mallory's testimony "several times" and determined that Levi had recklessly "penetrated [Mallory] without consent. That meets the definition of sexual assault in the first degree . . . . When she said no, he didn't stop."

As to the June 4 sexual assault, it was "less clear to [the court] what took place." The court "went back and transcribed [Mallory's testimony]," but when the court "line[d] it up with [Levi's] testimony," the court could not find by a preponderance of the evidence that the June 4 sexual assault occurred.

Because the court found by a preponderance of the evidence that Levi sexually assaulted Mallory on May 28, the court granted Mallory's petition for a long-term protective order.

Levi now appeals. Mallory filed a notice of non-participation in the appeal.

## III. STANDARD OF REVIEW

The factual findings underlying a domestic violence protective order are reviewed for clear error.[1] A factual finding is clearly erroneous when we are "left with a definite and firm conviction that the trial court has made a mistake."[2]

## IV. DISCUSSION

### A. The Superior Court Did Not Clearly Err By Finding That Levi Sexually Assaulted Mallory.

The superior court may issue a protective order if it "finds by a preponderance of evidence that the respondent has committed a crime involving

---

[1] *Vince B. v. Sarah B.*, 425 P.3d 55, 60 (Alaska 2018).

[2] *McComas v. Kirn*, 105 P.3d 1130, 1132 (Alaska 2005).

domestic violence against the petitioner," which includes sexual assault against a spouse.[3] At the time the protective order was issued, a person committed sexual assault in the first degree if the person "(1) knowingly engaged in sexual intercourse, and (2) recklessly disregarded the victim's lack of consent" to that intercourse.[4]

Levi argues that the superior court clearly erred by finding that he had committed sexual assault in the first degree on May 28. He contends that the record does not support that finding because the "only evidence" was Mallory's "own uncorroborated and self-serving testimony," which was contradicted by his own testimony.

We give "particular deference" to the trial court's factual findings that are based primarily on oral testimony, because "the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence."[5] Recognizing that the evidence in this case consisted largely of conflicting testimony from Mallory and Levi, the superior court "lined up all the testimony from both parties" and weighed it. Although the court found that Levi had "more often than not" presented "more credible testimony," it credited Mallory's testimony regarding the May 28 sexual assault. The court emphasized that it heard "fear in [Mallory's] voice" as she testified

---

[3]     AS 18.66.100(b); *see* AS 18.66.990(3)(A) (defining "crime involving domestic violence" as including sexual assault committed "by a household member against another household member"); AS 18.66.990(5)(A) (defining "household member" to include "adults . . . who are current or former spouses").

[4]     *Hess v. State*, 20 P.3d 1121, 1124 (Alaska 2001); *see also* former AS 11.41.410(a)(1) (2021).

[5]     *Wee v. Eggener*, 225 P.3d 1120, 1124 (Alaska 2010) (quoting *Millette v. Millette*, 177 P.3d 258, 261 (Alaska 2008), *overruled on other grounds by Geldermann v. Geldermann*, 428 P.3d 477 (Alaska 2018)); *see also Curry v. Tucker*, 616 P.2d 8, 12 n.3 (Alaska 1980) (explaining that deference to credibility assessment is warranted because the superior court "saw the witnesses testify, heard the inflection of their voices and observed their relative candor in answering questions").

about that assault, observing that the assault was "clearly something that's very difficult for [Mallory] to testify about." Based on those observations, the court found that it was more likely than not that Levi had committed the May 28 assault. This credibility assessment of Mallory's testimony warrants "particular deference."[6]

We are not persuaded by Levi's argument that the court erred because the only evidence supporting its finding was Mallory's own testimony. Levi provides no legal support for this argument, nor is there any legal rule or precedent in Alaska that bars a trial court from making a factual finding, under a preponderance-of-the-evidence standard, based solely on one party's testimony.[7]

Levi also argues it was clear error to find the assault occurred despite supposedly "inconsistent" conduct by Mallory following the alleged assault: Mallory's failure to report the assault or seek medical treatment; her decision to stay in their shared house when Levi returned roughly a week after the alleged assault; her affectionate text messages to Levi; and her amicable communications with Levi's parents.

But the court considered Mallory's post-assault conduct and nevertheless credited her testimony. The court acknowledged that it had "struggled with" some of Mallory's conduct, because it was potentially "inconsistent with what one would think one would do having been assaulted." However, the court recognized that this was just

---

[6] *Wee*, 225 P.3d at 1124.

[7] *See Whalen v. Whalen*, 425 P.3d 150, 157 & n.45 (Alaska 2018) (discussing that superior court's decision to credit one party's testimony about a specific fact over the other party's conflicting testimony was not clear error because "[f]indings of fact that rely on the testimony of witnesses are reviewed with particular deference"), *superseded by statute on other grounds*, Ch. 7, SLA 2019; *see also Felton v. Felton*, 679 N.E.2d 672, 679 (Ohio 1997) (holding that victim's testimony alone was sufficient to meet preponderance-of-the-evidence standard and emphasizing that "[o]ften the only evidence of domestic violence is the testimony of the victim").

"one interpretation" of Mallory's conduct. It gave greater weight to Mallory's detailed description of the events of May 28 and the tone of her testimony than to Levi's characterization of her conduct as inconsistent with having been assaulted. We see no clear error in the superior court's determination.

Levi also asserts that because the superior court found Levi was the more credible witness, it was error to credit Mallory's testimony over Levi's contrary testimony about the May 28 assault. But the superior court did not find that Levi was categorically a more credible witness; it "found [it]self more often than not believing that Levi presented . . . more credible testimony." We have explained that a finder of fact may "believe all, part, or none" of a witness's testimony.[8] The superior court therefore did not err by believing part of Levi's testimony and not believing other parts.[9]

Levi also compares Mallory's testimony about the May 28 assault and the June 4 assault, asserting that the testimony "was similar as to tone and delivery and similar in description in both instances." Because there allegedly "was nothing to materially distinguish the court's acceptance of Mallory's testimony . . . for one allegation [but not] the other," Levi contends that the court's finding that the May 28 assault occurred while the June 4 assault did not was "inconsistent and irreconcilable."

But Levi's argument about the "tone and delivery" of the testimony is

---

[8]  *Adams v. Workers' Comp. Benefits Guar. Fund*, 467 P.3d 1053, 1063 (Alaska 2020) (quoting Alaska Civil Pattern Jury Instruction 02.08).

[9]  Levi further argues that Mallory's testimony was inconsistent and therefore not credible. But the only "inconsistent" statement he points to — when Mallory said "he didn't rape me until June" — appears to have been a misstatement about the timeline, which Mallory corrected shortly after. Mallory clarified that the first alleged sexual assault occurred on May 28 and the second on June 4; she later confirmed again that "[L]evi raped [her] for the second time in June." Contrary to Levi's assertion, Mallory testified consistently throughout the hearing that the first assault occurred in May 2021.

precisely why this court grants "particular deference" to a superior court's finding based on oral testimony.[10] The superior court's assessment of witness testimony warrants deference because the superior court "saw the witnesses testify, heard the inflection of their voices and observed their relative candor in answering questions."[11] Further, the superior court explained why it credited Mallory's testimony about the May 28 assault but not the June 4 assault. Mallory presented more detailed and credible testimony as to the May 28 assault, whereas Levi provided more detailed testimony on the events of June 4, describing how "[Mallory] initiated the sexual intercourse" and that the intercourse was consensual. It was not "inconsistent or irreconcilable" for the court to credit Mallory's testimony about the first assault and to credit Levi's testimony about the second.

## V.  CONCLUSION

We AFFIRM the superior court's decision to grant the long-term domestic violence protective order.

---

[10]  *Wee*, 225 P.3d at 1124.

[11]  *Curry v. Tucker*, 616 P.2d 8, 12 n.3 (Alaska 1980).